Good morning, Your Honors. May it please the Court, my name is Jeff Ely, and I'm representing Petitioner Yun Chen. Your Honor, it seems that the issues in this case really center on whether Mr. Chen's actions constituted other resistance to a population control regime in China, and that the government punishment that was ordered by the local birth control committee was precipitated by this resistance to the Chinese government, which he showed on his wedding day. It appears undisputed in the record that on his wedding day, uninvited members of the local birth control committee entered the family's home and his marital bedroom to enforce a coerced population control program by forcing the cancellation of the population control program, and that to be eligible for asylum, an applicant must show that there was one enforcement of a population control program, and that the applicant resisted it under the ERIRA Act. This case has some similarities to the Lynn v. Gonzales case, which established that resistance to a population control regime may take a vocal or physical form. And in citing Levy-Ashcroft, when an asylum applicant claimed she had kicked and struggled with population control officials who attempted to force a gynecological exam, in Lynn v. Gonzales, an asylum applicant likewise unsuccessfully resisted population control officials from damaging the family home because the applicant's brother had failed to appear for forced sterilization. In this matter, Mr. Chen was clearly resisting efforts by the local authorities to enforce the program when they interfered with his wedding and forcibly entered the family home and marital bedroom. His resistance of the program resulted in an inadvertent incident where, according to Chen's testimony, one of the officials fell to the ground. From this incident, the local authorities then demanded that Chen make himself available for further investigation. When he continued his resistance to the program by failing to appear, he was, among other things, fined and sentenced to one year in a labor education facility. As an aside in the matter of S.L.L., the Board of Immigration Appeals held that resistance covers a wide range of circumstances, including expressions of general opposition and attempts to interfere with enforcement of the government policy in particular cases and other overt forms of resistance to those requirements. Essentially, Your Honor, a long-winded way of saying that the issue appears to be other resistance, and that it was clear that his resistance in his marital bedroom where an incident occurred in which someone fell, and he was punished for the entire process of it appears that the government seems to separate the issues of the birth control committee and the incident where someone fell. And we consider that to be all one and the same. It was one continuous process. His resistance was not only at the event and at the time, but it continued in his refusal to appear as requested by the local government agencies, and that that additional resistance ultimately added a penalty of imprisonment. No, I think we have your argument, Han, of Rutherford Reese. Why don't you save some time for rebuttal, and we'll hear from the government on that point. Thank you, Your Honor. May it please the Court, my name is Hannah Farber on behalf of the Attorney General. Just to review the context of this case, it arises in the context of the Chinese underage marriage law that prohibited Petitioner and his girlfriend from marrying when they were both 17 years old. The consequence of official intervention was a criminal sentence for assaulting an official, which Petitioner chose not to defend, and various penalties that did not rise to the level of persecution. The criminal sentence was the result of an alleged crime, not Petitioner's resistance to the law prohibiting underage marriage, and Petitioner has not shown that record evidence compels a different conclusion. Furthermore, the subsequent fine, damage to a room in the home of Petitioner's parents, and cancellation of household registration did not rise to the level of persecution. Thus, substantial... I mean, they wrecked the house. It was a creative solution. I mean, they went in, they took the part, the officials went in and took the part of the house where this couple was going to reside, and they destroyed it. And in doing so, they made the house uninhabitable for anybody. Don't you think that's persecution? They did cause structural damage. Petitioner had already departed China when the house was damaged. But more important, this is in the realm of economic persecution, and that standard is very high. Petitioner would have to show... How was it economic persecution? Well, because he wasn't physically injured by the destruction of the home, so... I see, because he's only suffered economic damage as opposed to any physical damage... Precisely. ...because he wasn't there when the house was destroyed. And none of his family members were injured either, though... So if somebody firebombs a place, that's economic damage? It's dramatic, but it has the same effect, which is that it does not... He wasn't there. There's no evidence in the record that any of the members, the family members, were there. And he would have to show that the damage to the house threatened his life or freedom. And he simply hasn't shown that. He could go back... The destruction of the house actually looks like an extreme form of forfeiture for failure to appear and pay the fines and serve whatever sentence they were prepared to mete out on the assault claim. But it certainly seems to be part of a piece with his resistance. I mean, it all sort of follows in a chain of events from resisting the policy when they come and interrupt his marriage. Well, this case is complicated in the sense that there are a number of different penalties at play, and Petitioners' Counsel has discussed them cumulatively. I'm breaking them out to look at them individually, because the penalties that relate to the resistance, the fine of 20,000 yen, the confiscation of the wedding gifts, and the damage to the house, taken cumulatively, those do not rise to the level of persecution. I've just discussed the high standard for that, and they simply don't meet it. Then, looking at the sentence to one year in labor camp, that relates to a crime, the crime of assault, and that is separate and distinct from the resistance. He can be exercising resistance to the underage marriage law, but that does not give him carte blanche to commit a crime. Counsel, how do you distinguish that Lin case? Because it seemed to suggest that there could be some physical conduct in resistance to family planning regime. What's different here? Is the assault charge, is it causally linked to his resistance to family planning? I would not describe it as causally linked. I would describe it as a crime that occurred in the context of exercising resistance, and that is different because it would be quite a stretch to hold that an individual exercising resistance is also permitted to commit crimes under that umbrella. Was he permitted to shoot an officer because he was exercising resistance? What's your argument as to how you distinguish his case from Lin? It is, in fact, as you mentioned yourself, the criminal assault charge. So, clearly, physical resistance and vocal resistance come together in engaging in resistance. But when that physical resistance becomes a crime, the crime of assault, that takes it into a different realm. So you have two separate violations. You have a violation of the marriage law and exercising physical resistance to it. But once that physical resistance becomes an assault, that takes it out of the resistance realm into the criminal realm. And here we have an assault charge. And according to Petitioner's own testimony, there was a scuffle. People were pushing one another. An officer fell and was injured. The police were summoned and informed that he had assaulted an officer. So we don't have any evidence that the assault charge was fabricated as punishment to his resistance. Instead, we have a reasonable basis for the police to charge him with assault, which is a crime in Chinese law. Thank you. I've actually made the points that I'd like to make, if there are no further questions. Okay. I think we have your argument in hand. Thank you. Thank you. Your Honors, briefly, the Lin case really indicates that a physical resistance is recognized as allowable under the law. Importantly, the government suggests that we conflate the issues of the government's claim, of the Chinese government's claim, that there was an assault. The record and the testimony of our Petitioner does not indicate that there was an assault. That was a charge that was made later by a government agency that was clearly working with the birth control committees as well. To separate those issues, the so-called assault with the resistance to the family planning, would really open the door to allow a government to claim any kind of other crime. The fact that he did not attend a required hearing or meeting could be considered a separate crime. If, under those circumstances, anything marginally outside the initial claims by the government can be considered a completely separate issue and a completely separate crime, that would, I think, change the asylum law completely. I take your point. But if, in fact, the punishment were only directed at the assault and nothing else, then I think the government may have a point that the punishment shouldn't be considered in a persecution analysis. Well, Your Honor, there was a claim of assault. Of course, that issue was never adjudicated. Our client claims that there was simply an incident, that there were many people in the room, and that, as a result, it could have been a trip, it could have been a minor physical touching. Whether there was an actual assault is clearly not on the record. The only mention of the word assault is by the Chinese government's notice to him after he had failed to appear for other reasons. So it's not clear at all if it was an assault. If there was an assault of some kind, it was still partially involved in the resistance to the fact that they were disallowing a wedding and enforcing their population control program. Counsel, if I could ask you a question, please. Would you agree that if, in the course of resisting the government policy, he pulled out a gun and shot one of the planning officials, then killed him, that his punishment for that, if he was placed in prison for a long term, could not be considered as punishment for resisting the policy? Or would you disagree with that? Your Honor, I mean, if he did so without any provocation or without a threat to his own life, I think that I would have to agree with you. But these circumstances are quite different than that, and it's only a claim that an assault was made, certainly not an adjudication or a definitive decision that there was an assault. It's simply the claim by a government that already had a motivation to punish this individual. And one can argue was likely pretextual. Okay, thanks. Any further questions? No. Thank you both for your arguments. I think you presented your points very succinctly and well. And at this point, we're going to take about a ten-minute recess and assess how long we may need. If we need any more than that, we will let you know. Thank you. All rise.
judges: Thomas, Gould, Bybee